We will hear argument in Donald J. Trump v. Committee on Financial Services. May it please the Court, Patrick Stauberidge on behalf of President Trump, his family, and the other plaintiffs' appellants in this case. There's no doubt that this dispute comes to the Court involving the House of Representatives on one side and the President and his family members and related businesses on the others, bearing obvious weight and importance. Can we clear up at the outset that it's the President in his individual capacity and not as official as the complaint says? That's what your complaint says. They seek documents from him in his individual capacity. I am not raising motive. I'm looking to what the real object of the subpoenas is, which is what McGrane and all of us... Well, no. The difference between... The motive line of cases that precludes inquiring into motive really arises about concerns that the House or the Congress has taken one action and we think that they're not taking the action that you can delineate from their statements, from the authorizing resolutions, or from the case that was subpoenaed themselves. There's something else completely going on here. You can't inquire into a secret motive in that sense. But McGrane, many of the cases make it very clear that you can inquire into what the real object is, what the legislative purpose is. Is that the real object as distinguished from no other object? In other words, they put something up as what, just a sham? No, I think the court in Watkins is very clear about this. Although it's a delicate inquiry, the court is obligated to look carefully, especially in a case that at least raises separation of powers concerns, and inquire carefully. Separation of powers when the president is preceded against in his official capacity. Is that right? Well, no. I think the Department of Justice is right that we can't ignore the separation of powers overturns here, particularly when the subpoenas are obviously targeting the president because of his role as president. Separation of powers if he's being preceded against in his individual capacity. Well, remember, I mean, technically the proceeding here is against the banks, and so there's even fading records. I think your point, and I agree with it, is that that really doesn't matter. It's still the president's papers. That is correct. I think when you look at some of the comments, and in particular we cite both in our complaint and our briefing, some of the comments that the chairs of the committee have made, for example. I mean, they specifically are talking about the need to investigate and expose whether or not the president has ties to Russia and whether there's foreign leverage over the president. Chairman Waters has specifically said that she's going to find out where the president's money is coming from. I don't think you can look at the face of these subpoenas and conclude that this is some kind of broad investigation into anybody who has some significant real estate investment or money laundering practices. The first request in both of these subpoenas is for the plaintiffs, who are all related. Let me begin with this presumption that there is a legitimate object in mind. That presumption is not conclusive. It can be, and we are to inquire into purposes. You say in your papers that you suggested various reasons we should move beyond a presumption. In this case, in one portion of the papers, you talk about the fact that the district court erred by declining to examine impermissible articulated purposes by committee members. Could you help me by just marshalling what you're referring to with regard to that argument? Yes. We cited some of the comments that are, I believe, in House Resolution 206, which is one of the documents that's relied upon for the Financial Services Committee subpoena. If you look at that resolution, it specifically talks about the need to bring transparency,  we think that's an articulation of a law enforcement objective, particularly when you actually look at the face of the subpoena and look inquiry by inquiry to see what it is that these subpoenas request. Why is that not a legitimate, excuse me, legislative purpose, since Congress itself has to legislate against money laundering and a variety of transactions that the United States government or the people of the United States have an interest in? Well, the court, certainly at the highest possible level, no one doubts that the Financial Services Committee has a legislative interest in ensuring that the banking laws are proper and updated as they need to be. But it does not follow from that proposition that at the highest level of generality they have an interest in passing those sort of laws or considering passage of those sort of laws, that the requests here are pertinent to that purpose. And when you actually see that the requests are so far afield from that alleged purpose, I think you can actually conclude that the subpoenas themselves are enforceable because... Is it fair to say, well, let's start with this. Do you think the committees have identified valid legislative purposes? I think the committees have identified legislative purposes that could be valid for some subpoenas, but I do not think that they are the legitimate legislative purposes that support these subpoenas. Would you agree that there are at least some categories of information sought that are relevant or even, I'll take your word, pertinent to those identified purposes? I would suggest that one could imagine a far narrower subpoena, in some ways narrower with respect to the targets, but also a broader subpoena is in looking beyond one particular person and his or her financial records and family members. But I was asking you, do you agree that at least some of the categories are relevant or pertinent to identified purposes? I think that it is possible that the subpoena could be narrowed or lessened to a more reasonable and defensible subpoena. Did you identify any category of information sought that was not relevant to a valid purpose? I think we've identified a number of categories that we don't think is pertinent to the purposes that the House is relying upon. The district court, by number? As I counted them, there were 56 categories among the eight largely numbered paragraphs, and I didn't see in the district court where you said, Judge, number three is not relevant, number seven is not relevant. I didn't see that. Yes, Your Honor. Both in our briefing and when I was at the lectern in the district court, we identified specific examples as to why we thought that those were clearly not pertinent to the request and why, and I think that the law supports this, it calls into doubt what the real object of these subpoenas are and justifies them. Did you identify them by paragraph number? I think we at least identified them by content, if not by individual paragraph number, yes. I think in the briefs we actually identified them by paragraph number. I think we've included some examples in our briefing in this court as well. I can give you an example. Fine, that would help. Right, right. For example, the financial services house resolution and the justification for the financial services subpoena has alleged that it's particularly concerned about the lack of disclosure in real estate investments and in the real estate market and the threat of foreign purchasers and money laundering in the real estate market.  transactions with foreign folks, transactions with alleged shell companies, transactions in the real estate market. They're seeking, with respect to every single named plaintiff as well as any of their agents or employees or anybody who's connected to these entities, every single account record at these banks, every debit card swipe, every check that was written, every account report, every communication relating to any of those things. If you're looking for money laundering, why wouldn't you want to know everything about the financial transactions? Because they do not have an interest in investigating the particular individuals who are plaintiffs here for money laundering. That would be law enforcement. They cannot just try to determine whether these particular people are in. Plenty of language from the Supreme Court that the fact that an investigation might develop evidence of a crime is not a reason to reject it if the investigation would deal with such things as whether the agencies are adequately enforcing the criminal law. So to respond to that, the Supreme Court has basically said the fact that some wrongdoing may come to light in the pursuit of a legitimate legislative purpose and there are inquiries that are pertinent. Yes, that is correct. That is not a basis for quashing the subpoena in and of itself. The problem here, of course, is that the real object of the subpoena and the Department of Justice, which I think understands a little bit about criminal investigation, agrees with us. The real object does appear to be law enforcement. But the committees do not have an interest in... That's what I'm trying to get at. When you say the real object, do you mean what's in the mind of the committee members who have issued the subpoena? I'm saying what is supported by the statements that they've made in which we've cited in our complaint as well as the face and the scope of the subpoenas themselves. And it shows why they're doing that. They're up to no good. It is hard to imagine somebody who is interested in conducting an investigation and reconstructing the financial history of the plaintiffs and their business organizations wanting anything more than what is required by these requests. If you were at the AUSA's office and you were drawing up a document demand to try to launch a law enforcement investigation, I can't imagine a single category of documents from either of these banks that isn't covered by these subpoenas. That's one way to put it, that if you were trying to just find out law enforcement, you're saying you'd issue a broad subpoena. But if you're trying to find out money laundering and corruption of the financial system by foreign affairs, wouldn't you issue this subpoena too? I don't think you would issue this. No, I don't think this type of subpoena supports a legislative inquiry into those topics. Why not? Because both the breadth and the specific target of the subpoena. This is not a request, for example, to Deutsche Bank of giving me the following information about people whose transactions reach this level, which is high-level information, specific information that would be system-wide. The only reason why they have focused on these particular plaintiffs and why the subpoenas make these particular plaintiffs the number one target of all their requests is because they want to investigate these particular plaintiffs and they're not permitted to do so. An interest in money laundering is an interest in money laundering compliance with anti-money laundering provisions within the banking industry. Correct. It's an institutional interest. I don't understand why the debit cards of the President's children and grandchildren in some cases have anything to do with an investigation that would support legislation or reform of the money laundering laws. For the moment, we may agree with that ultimately, but let's assume for the moment that we agree with you that an investigation, a case study deep into an individual's finances and the family's finances is unusual in the context of the legislature's need for information with regard to these subjects. Usually the legislature's need for this information is not so specific. It's not saying we want a case study. I'm not sure that would have a similar argument would work with regard to the Intelligence Committee subpoenas. Those are subpoenas that are seeking information or the Deutsche Bank subpoena issued by the Intelligence Committee seeking information specifically about interference in elections and legislation that might prevent these harms. Well, the subpoena on its face is far broader than that, is the best evidence as to why that is not the real object. At least at a minimum, it's far over broad. And the reason that you know that is because it is not, I think, a good contrast to this, both in terms of the substance of the inquiry as well as the actual procedure that was followed below and was issued here is the Bean case from DVC. That was the same committee basically investigating the same subject matter, and there was a subpoena to a financial institution for a customer's documents in two different district courts, and if I may just keep going here. Yes. We're going to be somewhat loose with the clock and we'll give comparable time to the appellee. I appreciate that. In Bean, two different district courts who received this recognized the problems, recognized the difficulties, encouraged, in fact, mandated that the parties sit down and try to negotiate what they really actually need. It went through two rounds of negotiation. Ultimately, when the subpoena came up to the court for enforcement, and I'll just note that when it came up to the court for enforcement, it was focused on two years that happened to actually be around the election, not 10 years like the Deutsche Bank subpoena is that far predates any concern about the 2016 election. It was focused on a specific number of transactions involving some specific delineated properties or counterparties, not every transaction that you've had for the last 10 years, not every transaction regardless of amount. That's the kind of narrowing, that's the kind of pertinent inquiry that then led the court in that case to say now that we are here, this satisfies the legitimate legislative purpose, and I'm not going to do any further line-by-line analysis as to the 83 transactions we have narrowed this thing down to. We're not anywhere close to the kind of focused inquiry that the Intelligence Committee had in that case, and I'd suggest that that's a good contrast to what's obviously happening here. As the Supreme Court recently emphasized, court is not required to express a certain naivety that everybody can see before their face. The committees respond to the point you made a moment ago about focusing on the president and his family, that the committees have issued other subpoenas to other people. What do you say about that? If they have issued other subpoenas to other people who are in the United States, we have not seen them. If the request of these committees do not seek bank-wide information about a particular category of people, I think that the statements that we identified where they specifically say, you know, Chairman Schiff specifically says we're here to determine whether or not there's leverage over President Trump and whether or not that needs to be exposed and what we can do to hold him accountable. You look at Chairman Waters saying, I'm going to find out where the president's money is coming from. You don't, you've never seen the other subpoenas? We have only seen the two subpoenas in this case, and my understanding is they have not been produced in this case. I think we asked for, we certainly asked for the subpoenas at issue here. I think at one point we made a bulk request for subpoenas regarding our clients, and we were initially rebuffed, and ultimately we negotiated a settlement regarding this case. And then they meet their, they at least endeavor to meet your point about focusing on the president that they've issued subpoenas to other people. Right, but I think you have to ask, like, are those other people at all confident? I think the Department of Justice makes a very good point here, which is, like, this actually seemed like an attempt to determine in the real estate sector in which the plaintiffs in this case are only one of many, many parties who engage in these types of transactions. Did this really seem like an attempt to gather information that used to be for legislation or to investigate them? I think the Department of Justice wisely suggests that in these types of cases, the president and his family should probably be the last place that the House goes to for that type of general concern about law enforcement and disclosures rather than the first person you start with. As a discretionary decision that may be, is that our call or the committee's call? I think this court certainly can follow the model that the D.C. Circuit followed in AT&T, that other courts have followed, for example, in Tobin. Sending them for negotiation? Sending them for negotiation, encouraging... Those were executive branch documents of the highest sensitivity, were they not? Yes, but the ability... National security wiretaps. In some of those cases, yes. The one you mentioned, AT&T. Right, but there are other examples, for example, the Bergman case from New York where it was a private party and there was still a determination made in that case that some of these requests are pertinent and some of these requests are not pertinent. The district court refused to even consider doing that kind of analysis. What happened in Bean, which again did not involve a request to an executive branch agency but just to a private party's banking records, still ordered the parties to negotiate on two different rounds. And so this court clearly... What sort of documents? Banking records, financial transactions, the precise type of records sought here. Official or unofficial? I'm sorry, official or unofficial? In respect to the executive branch. Those were all private records. The Fusion GPS case, it involved private parties' financial transactions. Indistinguishable from this case, except for, of course, how narrow and focused and pertinent the requests were there and how broad and overreaching the requests are here. Your claim about some documents, in your view, are not related, which suggests they are. Is that fair information? I think the narrower subpoena would present a much more difficult task and we have made it very clear we are willing to negotiate that. Are there other categories of documents you are willing to turn over? I do not have authority here to negotiate at the podium. We have asked before we... I'm not asking you to negotiate. No, no, no, no, please don't misunderstand. I'm not asking you to negotiate. I want to know, have you identified to the district court any categories you would be willing to turn over? We were not given that chance. We went in on a PI hearing and we were immediately bounced. Not given that chance? Yes, we specifically asked the court to impose the same kind of negotiation. Let me just be clear. I understand. You prefer him to send you off in a room, so to speak, to negotiate. I want to actually, just to clarify, we actually offered to negotiate before the PI hearing with the committee to narrow the request. In the district court. Did you say to the district court, the reason we need to do this is because there are at least this many categories we're willing to turn over. We did not identify with specificity which categories. We said that we imagined there are some documents. Accommodation could be reached here. In any discovery dispute, this declines to coerce or suggest negotiation. What's our standard of review in reviewing a decision by a district judge not to order negotiation? Well, I assume it would be an abuse of discretion in an ordinary discovery dispute. We, of course, are up here on the serious question standards under our preliminary injunction in order to prevent this case from going moot before we have a chance to engage in those types of negotiations. Here the district court determined that it didn't really have the authority to address any question of overgrowth. Even, I guess, even more remarkably, the district court determined that this subpoena was wildly overbroad, but it nonetheless lacked any authority to ask the parties to negotiate. That would be a de novo consideration for this court. One would think so. But ultimately what we're talking about here is the court doing its best to avoid unnecessary decisions of the constitutional dimension, which is true whether or not this formally involves the executive or not. And the tried-and-true method of doing that in some cases has been to push the parties to try to at least narrow the dispute. That's what the court did in Tobin. That's what the court did in Bean. It's essentially what happened in Bergman. It's happened in other cases as well. It's tried and true. I'll follow that last thought of yours. It has constitutional dimensions, even though they're private papers and the president is not being pursued and not suing in his official capacity. Yes, you're obviously being asked to weigh in on what the constitutional authority and what the limits of enforceability are for a congressional subpoena. And the point here, of course, is that, according to my friends on the other side, there are no limits. Anybody can be declared a case study as long as we have some topic under which Article I gives us some authority to enact. The courts are powerless to do anything to protect the recipients. Are we limited in our analysis to consider only statements that have been promulgated by the committee, committee members, as you've cited them as? Or are we permitted, essentially, to apply what I would analogize to rational basis analysis and imagine what Congress's powers are and say, well, it might not fit within this or this, but it might fit within something else? Yes, the cases, I think, make very clear that you have to assess the asserted purpose as the House has articulated it, as it articulated it at the time of the subpoena. So I think that you're bound. The House is subject to forfeiture and waiver, just like any other party. You have to stick to the basis upon which the House has acted. And, of course, you're also bound by things like the committee's jurisdiction, which, of course, it limits their ability to execute a subpoena. Can I just ask... Did you just say we're limited to the statement of purpose as of the date of the subpoena? Generally, the law says you have to determine the legitimacy of the request at the time that they're made. Didn't everyone examine what the committee chairman said to the witness right at the moment he was asked the question? Well, of course, in an oral examination, that's when the questions are posed. In a subpoena, the questions are posed at an early point in time, and so you can assess... That was long after the Congress voted their resolution, wasn't it? But that was the time at which the Court... Well, let me say this. The Court can determine what the real object of the subpoena is by the congressional record. Shelton and Baron Blatt make clear the types of materials that can be taken into account. We think that that's the appropriate place. And something that's long after the first resolution? The question as to... No, I don't think the subpoena's basis can be argued on a retroactive basis. You don't think that happened in Baron Blatt? I do not think that that was the basis for the decision in Baron Blatt. But they did rely on the chairman's statement to the witness, didn't they? They relied upon the chairman's statement and other statements. That was long after the subpoena was authored. The subpoena for testimony, but we're trying to determine when they're holding somebody in contempt what questions they were asked, so an oral examination is going to require a different time frame than a written subpoena. You're not distinguishing between testimony and documents, are you? No, the question is what is the basis for the request at the time they're promulgated? So any subsequently enacted resolution, any subsequent resolution, subsequent transcripts at congressional hearings would not be relevant to that question? Well, I think you have to take the subpoena or the request for oral testimony at the time that it's made. Again, we are dealing here with a record that has been through the district court, been through several rounds of briefing now in the Court of Appeals, and the legislative purposes are the ones that the committee has relied upon. Can I just follow up on this? We're here in the posture of an appeal from the denial of a preliminary injunction. These remarks seem to me to say, in this case, there really is no distinction between the preliminary injunction and the ultimate merits inquiry, that the record must be pretty complete then at this point. I was already thinking that with regard to the RSPA argument that you make, thinking that's a legal determination. We might get it right, we might get it wrong, but we have everything we need to make that determination now. I was assuming that there might be some further record development with regard to legitimate purpose. But am I wrong about that, that everything that there is to consider has essentially been proffered at this point? I mean, we asked for below, and I would reiterate. We are here on the serious questions standard. We do think the serious questions standard is the right standard that applies. We do think, I mean, for example, in the Mazars case, there was an opportunity given to supplement the record upon which we took advantage of. It may be somewhat limited in terms of the categories of information that we can supplement with, but it's not nonexistent. I also think that with respect to the RFPA, as we argued below, there is further room for development. I think there's also specifically further room to question how to interpret various provisions of the subpoena as to whether they're reaching parties whose records are protected under the RFPA. Could you comment on, this is from the Justice Department's briefing, but their argument that in a case like this that implicates separation of powers concerns, the House itself should clearly identify a legitimate legislative purpose. I think we generally agree with the Department of Justice that not only do they have to clearly identify the legitimate legislative purpose, the court needs to be careful to make sure that the legislative purpose that has been announced is in fact, or at least the requests are pertinent to that legislative purpose and that they're truly necessary when you're talking about an attempt to basically target and no doubt distract the executive. And after the fact, announce a legislative purpose that also encompasses what the requests are aimed at. A legislative purpose? No, I think that they're subject to waiver and forfeiture just like any other party in this case. I mean, certainly we haven't briefed, we haven't argued, we haven't had the chance to present any evidence with respect to any other purposes other than the ones that are stated on the record. The Supreme Court is not a stranger to this type of dispute about whether a court should stop a Congress committee from enforcing a subpoena. They've had a good bit of litigation over the decades. Do you agree with that? Yes, I mean, there's a fair amount of litigation largely related to the House Un-American Activities Committee. That seems to be where most of us are. It goes all the way back to McGrane. Correct. It goes all the way back to Kilbourn, actually. Kilbourn, even further. All right. Has the Supreme Court ever said that a court should say as to an identified legislative purpose by a committee, it's not the real purpose? McGrane itself specifically imposes upon court the necessity of inciting a real object. Have they ever said it's not the real purpose? I don't know if they've used the words real purpose. I don't mean to be picky with you, but disregarded as an announced purpose. The standard is whether or not the requests are pursuant to a legitimate legislative purpose and whether they are sufficiently pertinent to. I think Watkins does the best job of explaining how courts have to— He said the resolution was too broad and they narrowed it. Is that true? It was too broad. Yes. They ultimately determined that the— It's a lack of a legislative purpose. Right. I guess— That's what I'm asking. Has the Supreme Court ever said that a court should say to the Congress, yes, you've identified a legislative purpose, but we don't think it's the real one and so we're going to stop it? I think that's precisely what happened in Kilbourn. They argued that they needed to bring Kilbourn in for the purpose of inquiring in its legislative role as to what had happened in this bankruptcy, and the court rejected that and said you are conducting a judicial proceeding that is— You're doing law enforcement. You're doing law enforcement. Yes, correct. And here, are you saying that this is all about law enforcement and only about law enforcement? I think that the comments of the committee members as well as the face of the subpoena request leave the unmistakable impression that this is an attempt to conduct law enforcement. And thought this was not exclusively a law enforcement. Is there any Supreme Court case that gives us the authority to disregard a non-law enforcement purpose? Well, I guess I'm not sure what you mean by disregard. Having asserted a legitimate legislative purpose, and cases are all clear on this, including Watkins, you still have to demonstrate the pertinence of the request. The Supreme Court has made that crystal clear. And in Watkins, they specifically talk about the need to demonstrate on a request-by-request basis the pertinence to the asserted legitimate legislative purpose. So the court's job does not end just when Mr. Lutter stands up and identifies one conceivable legislative purpose that some request that's buried within this long list of extremely demanding requests for every account record of the president's grandchildren. The court's work is not over. And I would also note with respect to the— One last thing on the timing issue. Are you first saying that House Resolution 507 is irrelevant to this case? House Resolution 507, is that the more recent one? Yes. Yes, I don't think that that resolution addresses anything. First of all, I think that would be a retroactive rationalization. I don't think that the committee has explained or argued as to why. No, I'm not asking is it valid or does it do the job. Is it irrelevant? I do not think it's relevant in this case to this court. Because it came after the date of the subpoena. The Justice Department cites it as evidence of separation of powers concerns raised by this and other subpoenas, I suppose. They talk about the breadth of that resolution, which seeks to authorize past and future subpoenas for all committees, so long as they involve the president and his family. I mean, as a legislative act, I don't suggest that the court has to pretend that that legislative act didn't occur. It just has not yet been raised in any brief how it has any relevance to the particular legal issues that we've argued all along in this case. Could you address the RFPA argument? Absolutely. The RFPA in this case was enacted to protect the records of customers of financial institutions. The subpoena in this case no doubt seeks precisely the type of records that the statute was intended to enact. And we explained, I think, in great detail why the language of the act and the other textual provisions and the history, particularly the timing of various judicial decisions, leads to the inescapable conclusion that it is not limited to the executive branch, which is what Congress has argued. What do you say about the argument that the bill sent up by the Treasury and the Justice Department explicitly applied the statute to the Congress and the enacted bill did not? I remember when I was writing down that argument, the difficulty of wading through all 750 pages of the attachment to that legislative markup to find where that exact one line is. And then I fortunately remembered that there's a provision of law cited in our brief that basically says courts should not glean much information from unenacted amendments, as we put it. Well, courts say that when there's a proposal by the XYZ trade group and says, we think you ought to legislate on this subject, and the Congress doesn't. And the Supreme Court has regularly said that's a pretty thin read. In fact, it's a non-existent read. This is a bill sent up by a department that sends up most of the government's proposed bills. And it says we cover the Congress. And then that provision does not make it to the bill. You don't think that's persuasive? No, I don't think it's any more persuasive than the assumption that Congress, assuming Congress was already covered and there was no need to put a redundancy in the statute. And let me explain why that is. At the time of this enactment, the precise language that was used here had been upheld for nearly three decades as covering Congress, as that any agency and department language had been held to to cover Congress. That was what the background law against which the Congress was legislating at the time was. Moreover, the act contains a number of explicit exemptions. One of those explicit exemptions is for the GAO. So I don't understand why you would have any need to have a GAO exemption if the coverage was limited to the executive branch. The GAO is indisputably a congressional branch. Your adversary says that wasn't so clear at the time the provision was enacted, but it wasn't clear at the time it was a legislative agency. Could you address Section 3408? I mean, it's difficult for me to see how it could have been contemplated that this statute would apply to Congress given provisions like that one, which says that this request, you know, you have to submit a request, get authorization from the head of the agency or department before seeking private financial records. I mean, I don't think it's that hard to say. As we note, committee chairs do serve as the functional heads of their particular committees. But if it were to apply to Congress, would you use that language, head of the agency or department? We don't usually call, maybe sometimes, but it's not the usual nomenclature to call the chair of a committee. Well, I mean, as a point of fact, that is precisely what has happened in this case. The chairs of the committees have basically authorized and issued these subpoenas on behalf of their committees. So I don't think it's as much of a misfit as you might suggest. But there are other provisions, as I have said, and for the reasons we've given, that we think just as clearly make it clear that Congress and congressional committees were intended to be included. As you are probably aware, there is a provision that basically exempts from the FHPA financial records that a committee requests from a supervisory agency. If the FHPA didn't apply to any congressional committee request, why would you need a special exemption for these types of records requested only from these types of government authorities? That doesn't make any sense. I'd argue that makes less sense than referring to the chair of the committee as a head. I'm happy to sit down. I'd appreciate a couple of minutes for rebuttal if that's okay, but defer to the court. Thank you, Mr. Strawbridge, and you have reserved three minutes for rebuttal. The clock says 21. Put up 35 minutes, please, for Mr. Lutter. Thank you, Your Honors, and good morning. I'm Douglas Lutter. I'm the general counsel of the U.S. House of Representatives. With me today is Ms. Jennifer Reed from the Financial Services Committee and Mr. Daniel Noble from the House Intelligence Committee. I want to address, obviously, any questions this Court has. I took copious notes when my friend, Mr. Strawbridge, was arguing, and I've got answers to every single thing he said. The main thing I want to urge you, though, is two points. One, Judge Ramos looked at these arguments and rejected them in a very fine opinion. Even more so, I commend to you the Supreme Court's decision in McGrane where the Court unanimously rejected a very large percentage of the arguments that Mr. Strawbridge is making today. And, in fact, it did so in overruling a lower court that accepted many of those arguments. So please understand, the Supreme Court long ago unanimously rejected almost everything that Mr. Strawbridge is saying today. And so, really, what this means is Mr. Strawbridge is asking you, as a court of appeals, to go against a massive amount of Supreme Court precedent, some of which— The separation of powers concerns that the Justice Department raises. Do you agree with it that a subpoena of this type directed to a third party that's seeking the President's personal information implicates separation of powers concerns? Your Honor, the subpoenas at issue here do not. They do not raise separation of powers concerns. Much of the Justice Department brief, as you'll note, is hypothetical. It's because the Justice Department says, what if there were a whole batch of subpoenas? What if, you know, the President—I forget whether they use the word raft, but basically we're burying the President with subpoenas. And the key thing the Justice Department talks about is, what if Congress was really basically hindering or preventing the President from being able to carry out his extremely important functions? Is your comment on the other side correct in saying that this is the first Congress to issue a third party subpoena for a President's records in aid of legislation? I'm not aware of others that are like this, and there's a good reason for that. And if I could, though, I'd like to finish answering your first question, Judge Livingston, if you don't mind. So there's certainly a possibility of a separation of powers problem if Congress were— and the Supreme Court says this, for instance, I think in the Cheney case— if the Congress were acting in such a way that the President couldn't— he was so overwhelmed with subpoenas, et cetera. This is nowhere close to that. This should have—and I think Judge Ramos said this— this should have almost no effect whatsoever on Mr. Trump's time. And I use the word Mr. deliberately because, Judge Newman, you asked about, this is a suit in his individual capacity. It's very interesting to think of this as a separation of powers problem when Mr. Trump himself, represented by his own private lawyers, is the plaintiff here. It is not President Trump. He's not suing the President. The Department of Justice took no position in this case or in the Mazars case until the court said, let's hear your views. So there's a potential for a separation of powers problem, but it's definitely not raised by this case. Would that potential raise the language in cases like Brumley, that courts should tread warily and think about alternatives to making broad pronouncements about the scope of congressional authority or the scope of presidential authority? No, Your Honor, because this so clearly does not trench on President Trump. The records being sought, first of all, some of them are bank records of the banks. That's one of the key things that I think Mr. Strawbridge passes over, but Judge Ramos didn't. We're asking for some of the key documents we want are analyses by the banks. Remember, you have a situation where Mr. Trump is going to Deutsche Bank asking for very large loans when no other bank apparently will touch him. And this has been widely reported in the responsible press. And so, for obvious reasons, both committees here want to know, why is it that Deutsche Bank would be willing to lend a large amount of money to somebody that no other bank would touch way before he is President of the United States? How does that fit within a legislative purpose? No, Your Honor, it's key because the question is, what was involved there? Why were these banks willing to lend under these circumstances? And should there be more legislation? Should there be better regulation so that this doesn't happen? And this fits in with another question that was asked. And Mr. Strawbridge pretty much ducked it because he said he didn't know. The Financial Services Committee has issued, I think, ten subpoenas. We've subpoenaed a whole batch of banks that have absolutely nothing, absolutely nothing to do with Mr. Trump or his family. For my edification, temporarily, when were those issued in relation to when the subpoena or subpoena is at issue here? Most of them were issued simultaneously. Ms. Reed has informed me, I think, another one was issued recently. And indeed, even the subpoena here lists other banks. And it lists, for instance, Russian oligarchs. We're doing, the Financial Services Committee, and I'll get to Intel in a moment because we don't want to forget that. The Financial Services Committee is doing a very large industry-wide investigation because, as House resolutions provide, we think there may be a very strong need for more regulation because Russian oligarchs and others, their money is pouring into the United States and being used in real estate deals and other types of transactions to launder this money. I can just clear up a couple of details. You started with the timing of the others. Were the three subpoenas all issued on the same date? That's my memory. One of them is undated, so it seems they were done the same date. I'm fairly sure that's right, Judge Newman. Okay. Another question about the content of the Deutsche Bank subpoena. There are eight large paragraphs in many subcategories, right? You're familiar with that structure? Yes. All right. Paragraph 1, with all of its subdivisions, identifies a number of people and a number of entities, correct? I'm pulling it out to follow you, Your Honor. Yes, yes. My question is, do paragraphs 2 through 6 ask for any documents of the people or entities identified in paragraph 1? I'm sorry, Your Honor, I'm going to have to take a moment and look closely at this because I don't... It appears it doesn't, but I wanted to know that to see if we have to even worry about paragraphs 2 through 6. The subparts of 1 all refer to the persons or entities named or identified. Again, Your Honor, I apologize. I have to look at this and I've asked... If I have a case, if the answer is yes. Okay, thank you. And if it's accurate. To be honest with you, Your Honor, I would have to take probably some moments to look closely at the wording. I've asked my colleagues to do that. May I get back to you at the end of the argument and answer that? Would that be all right, Your Honor? I can wait until then. All right, thank you. Thank you. I think Your Honor said you had several questions. Okay. Do the subpoenas call for the bank to produce checks? I believe records of checks. I believe so, Your Honor. Records of checks. Yes, I believe so, Your Honor. All right. Now, I don't know if this is the case or not, but I just want to ask you about this possibility. Let's say a company, there's a company in here, and the company has an employee who they think needs to receive medical attention. And they say, we're going to pay for it for you. We're going to write a check. We're glad to pay for it. And they do. And that check gets cleared and in the possession of Deutsche Bank. Is the Congress entitled to see that check? It's certainly entitled to issue a subpoena that covers it. Would that check then, if Deutsche Bank said to the committee, we have some checks that involve a gardener in Mr. Trump's employee and really don't seem to have anything to do with anything except his personal health problems. Can we exclude that? That's exactly the kind of thing that the Financial Services Committee talks to people about when there are these kinds of investigations. The judgment you're asking to be affirmed doesn't have any safety valve at all for that type of check. And as I said, though, our practice is we certainly are willing, and we do. I've met with the committee staffers. It's the kind of thing that they do. So if Mr. Trump wants to say, you're right, this subpoena is valid. I've got some minor parts of it, some very, very minor parts of it, that really don't have anything to do with whether or not I'm laundering money for Russian oligarchs. Could we exclude those? We would be happy to talk to Deutsche Bank about that. There's a judgment for compliance. At least the district court didn't state it. We've stated it, but it was the agreement that stated it, rather. If we affirm, which is what you're asking us to do, we would just be relying on the fact that, as you say, the committees are willing to make some accommodation. Absolutely, Your Honor, except let me say this. If your concern is what I've just said, these subpoenas are obviously valid, but we're concerned that there are some tiny, tiny percentage that have nothing to do with Mr. Trump and his family and these other businesses, various businesses, have nothing to do with their real financial activities, we will direct Deutsche Bank not to produce those. We would have absolutely no problem with that. It's not necessary, but if that's the court's concern, we can take care of that in an instant. We don't have any trouble with that. The problem is... You'd also have no trouble if we were to insist on that. Again, Your Honor, if this court orders these subpoenas are enforceable, but, and drew this exception consistent with the hypothetical Your Honor has raised, we would have no problem with that. We're not interested in... One other question about the committees. If compliance is ordered, do you intend to make the documents public? That is up to the two committees. And, by the way, the committees have different rules. The Intel Committee receives information, and then under its rules it varies. Different procedures apply as to whether they will or will not be made publicly available. The Financial Services Committee doesn't have those same rules, but in general, again, we're happy to listen to arguments about why things should not be public, but this is the Congress of the United States, and the Congress... Exactly, Your Honor. Sorry, that was my next to last. One other one. One paragraph calls for tax returns. I'm going to ask the banks later if they even have them, but do you know whether the banks have tax returns of any of the named parties or entities? Your Honor, I don't think we know that the bank has tax returns. And I'm not... One way or the other. I'm sorry. You're saying you don't know one way or the other. Do not know. One way or the other. My understanding... Correct, Your Honor, one way or the other. My understanding is for these types of massive loans that we're talking about, remember that Deutsche Bank, I think, ultimately was lending Mr. Trump and its various enterprises, I think it's about $2 billion. My understanding is in that kind of situation, it would be common for tax returns to be provided. If they have them, and I hope we're going to find out before the morning is over, if they have them, and your subpoena does request tax returns, yes? That's my understanding. Have the committees complied with the statute that specifically applies to tax returns? Yes, Your Honor. We're in full compliance in making the request with 22 U.S.C. 6103. What would happen with the tax... And tell me how you've complied with it. Because that statute allows requests by committees under certain circumstances for tax return information. Whether they would make public or not the tax returns, I don't know. I'd have to look very closely at the statute. Doesn't it say, and you have to certify that the information cannot be obtained by others, from other sources? I believe that is, my memory is that is part of 6103. I'd have to check that, Your Honor. We can get back to you on that to find out if that certification was made. There's nothing in the papers that show that. And again, I will be happy to check and get back to the court on whether and how we have complied with 6103. No, Mr. Trump has not raised any issue along these lines in this case. But I'll be happy to... Did he make compliance with the statute? I don't know. Remember, what Mr. Trump here is saying is, I'm not quoting his words, No. I'm not turning over anything. I'm not complying with any subpoenas. You have a lot of appeals where one side says we want it all and the other side says you don't get any of it. And we're not necessarily limited to those choices. Right. All I'm saying, Your Honor, is Mr. Trump has not raised any specific 6103 objections. I'll be happy to check into that specific question and give you a fuller answer. Because nothing was... What I'm really saying to you is I'm giving an excuse for myself. Since they have not raised that, I am not prepared on that question. And just this morning, I think I heard your colleague on the other side argue for negotiation over breadth of the subpoena. So I don't think he's saying just no, at least this morning. Could you address the argument that in a context like this, these are very broad subpoenas. The district court recognized they're very broad. The district court didn't think it had any legal authority to address over breadth. Do you agree with that? Yes, Your Honor. But I'd like to explain a batch of things. As we know, the Supreme Court has made clear it's not your function to be going line by line in congressional subpoenas. Your function is to say, is this subpoena in general valid? And so that's your function. We think actually on that, as Judge Ramos held, there's really no even serious question. However, if this is over broad, if Mr. Trump wants to engage in some sort of serious and actual negotiation, he has given absolutely no indication of willingness to do this. When Mr. Strawbridge raised this in the district court, I said, I do not believe that this is sincere. There has been no indication from Mr. Trump that, you know, actually, yes, obviously, Deutsche Bank and Capital One can turn over their own analyses of my billion dollar loan request, the bank's own, and obviously this and obviously that. I'm not going to fight about any of that. If this court thinks there should be negotiation, I'd like to say the same thing I said to the district court. Please make it really, really fast because we think that Mr. Trump's statements make clear this is absolutely insincere. And ask Mr. Strawbridge again when he gets up, all right, what kinds of things are we talking about, given that his client has said, no, nothing. Let's not waste time with this. I really think this is a red herring, but fine. Give us a day, give us 20, I think 20 minutes would reveal that this is not a sincere offer. Mr. Trump and the various other people have given no indication whatsoever that they actually would be willing to negotiate over in any way that's serious. The ATT order suggestion from the court to negotiate came after the parties had undertaken protracted negotiations. And the court said we want you to sort of continue what you're doing. You're exactly right. And, Your Honor, there, as I think one of your questions pointed out, that was involving questions where there were national security concerns. The documents were different and the progress of the parties was substantial. Yes, exactly. And, Judge Livingston, if I may, this gets back to, remember the Justice Department was saying that this should be done because it involves separation of powers. As I explained, it doesn't involve separation of powers. This is not, there is no reasonable argument that if Deutsche Bank turns over materials, and remember Deutsche Bank has all sorts of burdens on it, but Deutsche Bank has never said to us, you know, we can't comply because there's just a lot of materials. That's not what Deutsche Bank is saying. Mr. Trump is being called upon to do virtually nothing for private records that are non-privileged that he turned over to private business organizations. And, remember, the Supreme Court in Miller has said these are not privileged. And, indeed, it's quite interesting. At one point, Mr. Trump, in the Mazars case, suggested that there was something wrong done here because the House sought the documents from the bank. So, apparently, Mr. Trump is saying, you know, the proper way to do this is subpoena me so that it will disrupt my presidency. And that's a very strange suggestion for him to be making, and I think shows the insincerity of all of this. Here's my concern. As you said, you can't cite a precedent for a subpoena of this sort before. So that makes me think, well, I should seriously consider the Justice Department's argument about separation of powers concerns. I realize it's a third-party subpoena to a bank seeking private information, not official records. And I realize it's not going to take the President's time to go through the Deutsche Bank's work in compiling the documents. But this is the first incident of a subpoena like this. And in that context, the Justice Department says, well, you should consider you have an obligation to make sure there's a legitimate legislative purpose articulated with a sufficient degree of particularity that judicial review is possible and that there's enough connective reasoning to connect that purpose to the breadth of these subpoenas. And these are very broad subpoenas, and it's a little unusual to do a case study. I know I'm mischaracterizing partly the argument, but a case study into whether banks are complying with anti-money laundering statutes. There are other legislative subpoenas that might have sought information relevant to a question like that, at least. Several answers, Your Honor, if I may. First, we are doing those. We're doing lots of case studies. And any notion, again, that this is only Mr. Trump is absolutely false. It's a lie. Second, there is already substantial information out there because of Mr. Trump's notoriety, and plenty of this started before, about that there are all sorts of suspicious things going on. No other bank will touch Mr. Trump, and yet Deutsche Bank lends him a large amount of money. In addition, let's not forget the Intelligence Committee. The subpoena there is to determine if there is foreign influence over this administration, which then there's talk about, well, what about the family members? Well, remember, one, Mr. Trump has not separated himself from these businesses. His sons, in the newspaper, it's quite clear they are doing business with and attempting to do business with Saudis, Russians, etc. So, of course, we're asking about family members. It would be absurd if we weren't doing that. The key point is, again, the Justice Department brief is hypothetical, because it's saying, well, are there other ways you could have obtained, can obtain this information, etc.? And again, remember, I said yes, and as to those other than Mr. Trump, we are. But since this isn't a separation of powers problem, it isn't interfering with President Trump doing his job. And there clearly are legitimate purposes here. Then you're in the territory where the Supreme Court has said the courts do not, it would be a separation of powers problem, the Supreme Court has said, for you to interfere with Congress in carrying out its Article I responsibilities. And so, in addition, there's one thing that the Justice Department doesn't deal with, because it's very inconvenient for them. And by the way, the Justice Department, as I said, their brief is hypothetical. The Justice Department doesn't deal with the history of this country. We have, we pointed out just some illustrative examples. George Washington, Abraham Lincoln, Harry Truman, they had situations where Congress was being very intrusive. They wanted to know, President Lincoln, how are you carrying out the Civil War? You're the Commander-in-Chief, but boy, do you seem to be doing a bad job. And so we want to investigate how the war is being conducted. The historical record makes clear that President Lincoln grumbled about this, but he cooperated, he talked to Congress. Now, you might say, oh, well then that's different, that shows voluntariness. Well, it's not different. That's why we cited, for instance, Mistretta. It was President Lincoln as President Lincoln, not a private individual. And, so then we have President Nixon as a private individual. Congress asked for tax returns. He surrendered voluntarily, surrendered some tax returns. Congress asked for more, and indeed, asked for tax returns of his family members. And those were turned over. Did Congress look at that? It would have been Ways and Means. And it's discussed in our supplemental brief. We go into that, we give lots of citations. Whitewater. Congress wanted the records of President Clinton and his wife about whitewater investments, so things that involve their personal records before he had become President, and they complied. That was the Whitewater Committee in that case. I believe so. And the Justice Department seems to think that matters. I don't understand why that matters. Their clear statement argument. Their clear statement that there's a specially convened committee to seek such records. And one question is why is that? So that's not a separation of powers problem? As long as Congress creates a special committee. Two answers. One, the Judge Walter Nixon case in the Supreme Court. The Supreme Court said the courts cannot review the way Congress operates, the way it sets up its procedures. But even more so, we wanted to remove this argument from the table. So after it was raised in the Mazur's argument, Congress ratified these subpoenas. The Mazur subpoena and the House ratified and the Deutsche Bank subpoenaed. Resolution 507? Yes. And that's the resolution. I mean, on the face of it, that resolution doesn't satisfy or the Justice Department says it doesn't satisfy their concerns because it's a resolution that purports to authorize all subpoenas so long as they involve the President and his family. I don't think the Justice Department said it didn't satisfy. They noted that it went beyond. But it did. What are these subpoenas for and what's the purpose and how did the breadth of these subpoenas satisfy that purpose given that it's authorizing subpoenas into the future? I'm so glad you brought this up because, as we pointed out, it ratified these subpoenas. It identified them specifically. They're right there in the whereas clauses and it ratified them. The Justice Department doesn't deny that. The Justice Department says, yes, but then you ratified others in advance. So if that happens, we can litigate that. That's got nothing to do with whether these subpoenas meet the clear statement rule. If you address the standard of review because you begin by arguing a likelihood of success on the merits should be our standard, but I don't know if you've made that argument very strenuously below. Is that really an argument that you're pressing here? Below, we said we thought what should happen here was the same as Mazur's, which is this should combine and be the merits. These are legal questions. As an aside, I'll come back to this. Mr. Strawbridge says we might conduct discovery. He can't conduct discovery. The speech or debate clause says that when the president sues, he can't start collecting discovery of members of Congress. That is absolutely forbidden by the United States Constitution. So there's no discovery of Congress that's going to happen here. And in addition, it would be inconsistent with the Supreme Court precedent. So we're not going to have any discovery. We have legal issues here. The appellate courts can take an appeal of a preliminary injunction and turn it into a final one. I'll give you one example. The Supreme Court in a case called Munaf. It's in the top of my mind because I was one of the lawyers for the Justice Department in that, M-U-N-A-F. The Supreme Court took a preliminary injunction that was before it and said there's just no good argument here, and it made it a final decision, and that's what we would urge you to do. As far as the standard, the actual standard of review, I'm not criticizing, but this court has not necessarily been consistent always. Sometimes you've said in these circumstances reasonable likelihood of success. I think other times you've said serious question. I frankly, having read the case law, I'm not positive which one applies. We think your case law says most likely it's serious likelihood of success, and we're comfortable with that. I think Judge Ramos dealt with whatever standard there was. But again, there just doesn't seem to be any reason not to take this final. On the clear statement point which has been discussed, that was specifically asserted by the appellants in the Mazur case. Is that correct? Yes, in their reply brief. Correct. Whether that tendered it is, that's not our issue. That may be a D.C. Circuit question. Right. But it was at least raised there. Yes. I take it from your papers you believe it was not raised here. Oh, that is correct, and if Mr. Strawbridge can point to it, I'd be very interested, because they didn't raise it here. Obviously a deliberate choice. By the contrast between what they said there and what they did not say here. Exactly, and that's why, again, the Department of Justice brief is hypothetical. The Department of Justice says, well, what about the clear statement rule? Everybody knows it's clear. If President Trump had decided to comply with these subpoenas, he can do that. The Justice Department can say, you know, if you had chosen not to do it, there are some arguments you could have made. Clearly the Justice Department could say that. But if President Trump said, I don't care, I'm just going to comply, leave me alone, Justice Department, he could do that. President Trump here, Mr. Trump, chose to raise certain arguments. He obviously quite deliberately chose not to raise clear statement in this case. Do you attach any significance to the fact that the United States did not intervene but filed an amicus brief? I don't, I'm trying to figure out whether the Department of Justice could have intervened here, whether it would have had sufficient I'm not going to, I worked 40 years at the Justice Department, so I have some idea about how they think. But I'm not going to try to psychoanalyze that, Your Honor. Sorry, I don't know. Small question. Yes. Within the Deutsche Bank subpoena, but not Capital One, there are some redactions. Yes. Who made the redactions? Which side? I don't mean the individual side. What happened was we made the, the committees made the redactions because these are, the subpoenas go to people other than, and entities other than Mr. Trump, and we don't want that public. We shared with Mr. Trump's lawyers, I forget whether it was all of the names or most of the names, Mr. Schroberg should be able to correct me on that. And there was no disagreement that these could be redacted because they did not involve, there wasn't any reason for their names to appear in the subpoena. For instance, they involve some other banks, some Russian oligarchs, etc., and there was no reason to make their names public. I have one, and it's subpar, but taking one as a whole, as I see it, there are only two lines that are redacted and they refer to essentially the same, same person. Is that something that should remain redacted? Yes, Your Honor, but if this court would like the unredacted version under seal, we're happy to provide it to the court. We have it under seal. Oh, you have it. Oh, okay, I'm sorry, Your Honor. Yes, Your Honor, those redactions should remain, and I don't believe that Mr. Trump has any concerns about the redactions that we made, and my colleague just indicated we did show Mr. Schroberg the unredacted version. To just quickly review my notes, law enforcement purpose, this is the main argument that Mr. Trump has made. First of all, gosh, McGrane. McGrane was an investigation of Attorney General Daugherty, not because, well, he wasn't doing a great job or anything. He engaged in criminal behavior. I believe he went to jail. So the fact that the Senate was doing an investigation of him, that doesn't make the Senate investigation invalid, and the Supreme Court is quite clear on that. And, in fact, one of the things the Supreme Court relied on in ruling that these kinds of investigations are totally proper, it pointed out there was a major investigation of John Brown's raid on Harper's Ferry. Why it happened, how it happened, causes, et cetera. Well, again, that's clearly criminal conduct, and yet the Supreme Court gives that as an example of why it's perfectly appropriate for there to be congressional investigations. Investigations of Whitewater, investigations of 9-11. Congress did a massive 9-11 investigation. The subpoenas are identical, and there are some references in the record about the committees working in parallel. Is there anything you could say to illuminate us about that? Certainly, Your Honor. As I understand House procedures, individual committees don't issue joint subpoenas. Individual committees can agree to cooperate with each other and share information, and plenty of times they do. And this is an instance when the two committee chairs recognized there was a significant overlap, so they entered into agreement about sharing of information. Remember, though, I noted the Intel Committee receives certain information that cannot be shared. For instance, sometimes it can be classified, et cetera. It cannot be shared without further action by the Intel Committee. And so what the committee chairs decided to do is each committee would issue a subpoena in order to be consistent with House practices, but they would be identical and the committees would, to the extent they are allowed, would share the information. So that is just an oddity of House procedures. There's nothing suspicious or strange about this. Oh, Mr. Shroverage said, oh, we've ranged so far afield, we're doing broad subpoenas, et cetera. I can only speculate that Mr. Shroverage has not done a major financial fraud, money laundering investigation. I know as a former U.S. Attorney, Judge Newman, you probably were involved in some of these, and I think if I'm not mistaken the other judges also were former prosecutors. We're investigating massive amounts of Russian money. We're talking about some of the press has reported, for instance, about $20 billion of Russian money that is being laundered, et cetera. We're talking about two banks that have themselves paid very, very large fines because they have engaged in the past in what we think is illegal activity tied in with money laundering, hiding assets, et cetera. So we are doing an extremely broad investigation. In addition, the way Mr. Trump and his family operate, remember we're not dealing with like Ford Motor Company, a broad corporation with lots of shareholders, et cetera. It's a small group, the family, with lots of interaction, lots of intersecting ties, et cetera. So of course we have to do this kind of investigation, and the amounts of money we're talking about, we do have to go. It wouldn't make any sense at all to say we're trying to figure out if Mr. Trump is under the influence of the Saudis or the Russians. So let's just look at the last two years of financial dealings. That would make no sense whatsoever. Obviously we need to find out when did this start? What are these deals, the financial deals? How is the money flowing? Who is it flowing to? Is money being hidden in certain names? In the district court, Mr. Shrover challenged, well, how come they want domestic financial transactions? Well, obviously if you're laundering Russian money, moving it to the United States, you need to see how is it being invested domestically. So this is a, as I said, major investigation of a whole industry that the Financial Services Committee is doing, and a major investigation by the Intelligence Committee about possible highly dangerous foreign influence over the highest levels of the United States government. It would probably be criminal if these committees said, ah, we're just going to look at tiny little stuff. Let's see. Oh, I wanted to say my colleagues tell me that Judge Newman, paragraphs two and six do not involve individuals and entities in paragraph one. So I think that was right. Paragraphs seven and eight references individuals and entities in paragraph one. Is that correct? That's what I'm told. Then, let's see. And remember, we are dealing with somebody who has, at least he claims, vast wealth. So it's not like we're dealing with somebody who would just be involved in one transaction. And, Your Honors, may I consult with my colleague for just five seconds, please? Yes, you may. My colleagues were reminding me to say something which I just said. Oh, the other, I'm honest. We expect you to be. I appreciate that, Your Honor. Remember also, this came up several times, Mr. Schrodinger saying we can only look at what the justification at the moment the subpoena is issued. So Watkins, what the court looked at there was beyond that. But the key is, remember, the Supreme Court has instructed you it's valid, the subpoena is valid if it was legislation that could be enacted. So one of the things the Justice Department, for some strange reason, has disregarded that and said, well, because you're asking for Mr. Trump's unprivileged records in the hands of a third private, unprivileged records in the hands of a third party, they've forgotten that Congress doesn't have to identify in advance the legislation or what it expects to find, which makes sense. At the time, obviously Congress doesn't know. Coverage was arguing, I think, and obviously he speaks very well for himself, that no, the purpose has to be declared at the time or made clear at the time that the subpoena is issued. And I don't believe that that's consistent with Supreme Court practice. As I say, it seems to me, Darren Watkins... So a second thing, no pro-Trump rationale today, Congress can... If necessary, yes. Now, here that's not at all what happened. Pages, I think it's about three through ten of our brief, we give all sorts of explanations, quotes from Chairwoman Waters and Chairman Schiff about what they're doing and why. We refer to some House resolutions, etc. If what Mr. Sharbridge is talking about is the resolution that ratified, well, of course that came after because we were ratifying it to show this clear statement argument is silly to begin with, but fine, we'll play your game and we met it. Can I ask one question right on that point? There's reliance, I think, in your papers on the Intelligence Committee's report to the Oversight Committee, which identifies several purposes of the Intelligence Committee. When they reported to the Oversight Committee, there's a statement of Chairman Schiff. That statement is dated, I think, a day after the subpoena, but it refers to discussions with the committee in prior dates. So is it a fair inference that the preparation of that statement and those purposes was before the subpoena? Absolutely, Your Honor. Yes. I realize I just have a couple more points. I'm sorry to try your patience. Not surprisingly, and as you indicated, Mr. Sharbridge is extremely articulate, I agree. He relies heavily on Kilbourn. Remember, the Kilbourn decision then, the Supreme Court itself has indicated that it actually needs to be read very narrowly. I think both McGrane and, if I recall correctly, Baron Blatt say that. Mr. Sharbridge is complaining about grandchildren. I don't think that these subpoenas talk about immediate family. I don't believe that it has ever said anything about grandchildren. If it did, though, that would be perfectly valid. When money laundering and hiding assets, et cetera, is done, people who are doing it use family members unwittingly plenty of times to hide things. If I might just very briefly, the right to financial privacy act. First of all, it's very interesting because Mr. Trump has argued these subpoenas are invalid because they're carrying out law enforcement, and that's invalid because Congress can't do law enforcement. I agree, Congress can't do law enforcement. Then why, just a couple of years after the Supreme Court said that Congress has the power to get financial records, why, two or three years later, would Congress pass a statute that says you can get government, you can get records if it's part of a law enforcement investigation? Thereby saying, if Mr. Sharbridge is right, Congress, without ever saying anything along these lines, promptly took itself out of the ability to get any of these kinds of records because Congress, we all agree, doesn't do law enforcement investigations. If Mr. Sharbridge is right, shortly after being told by the Supreme Court that it can gather law enforcement financial records, Congress said in a statute, without any comment of any kind, we're hereby giving away that power. Hubbard, the Supreme Court decision there, sets out what the statutory language means, and I agree, the question about 3408, again, of the statute shows why it is exceedingly, it would be very, very strange reading of a statute to say that Congress meant to exclude itself. In addition, Congress would have been providing for punitive damages against itself because the statute allows for that. Again, so here, this subpoena, apparently, Congress would have, if Mr. Sharbridge is right, Congress would have been providing, you can get punitive damages against the Congress of the United States for issuing a subpoena like this. If it doesn't comply with the provisions. Well, and it can't comply with the provisions because, as I say, it's law enforcement, it's limited to law enforcement, we don't do law enforcement. Thank you. Thank you for your patience, Your Honors. Mr. Strawbridge, 10 minutes to start? You only asked for three, but. Makes me want to sit down. Let me just pick up on that point. Thank you. As we pointed out in our brief, the law enforcement, the definition of legitimate law enforcement inquiry is actually a statutorily defined term that's broader than the constitutional definition, certainly broader than the constitutional definition that my colleague is urging. So that's a red herring, I think, on that. But I want to address some of the more fundamental points that Mr. Leder made when he was up here. Let me start with his suggestion, I guess, that we're being insincere or somehow that we're not actually negotiating in good faith. I mean, I made, Mr. Leder is absolutely right, I went down to the House of Representatives, I was shown an unredacted copy of that subpoena. At the same time that I was inquiring as to the unredacted copy of the subpoena so we could resolve a discovery dispute below, I made an offer, this is in our brief, I made an offer to discuss limiting the subpoenas and invited them to engage in discussion with us. I never heard anything back. I made the offer on the record twice in front of a district court, which is a statement that I take seriously and that I consider myself bound by, and we made it numerous times in our brief to this court. So I don't think there's any basis to determine that we're being insincere, and I certainly welcome, I think we've made clear, sending this case back down for judicially referee negotiations on whatever timeline the court thinks is appropriate is absolutely something we are willing to participate in in good faith. With respect to Mr. Leder's assertion that McGrain overruled all of our arguments, I can only read to this court specific lines from McGrain that refute that assertion. McGrain specifically says, according to the decision, the only legitimate object the Senate could have in ordering the investigation was to aid it in legislating. Legitimate legislative purpose. It specifically says that when determining whether there's a legitimate legislative purpose for a subpoena, you can look at the face of the request as well as the statements of the authorizing committee, and it specifically notes that if an inadmissible or unlawful object were affirmatively and definitely avowed, then there may be grounds to question whether or not the subpoena is legitimate, and it specifically, citing Kilbourn, says, a witness rightfully may refuse to answer where the bounds of the power are exceeded or the questions are not pertinent to the matter under inquiry. That is very much every aspect of the arguments that we have asserted here. McGrain did not overrule any aspect of the arguments that we're making here. Watkins, which comes much more recently, is even more specific on this point. Watkins, first of all, raises the point that the court cannot simply assume that every congressional investigation is justified by a public need that overrides any private rights affected. It specifically identifies three aspects of a congressional inquiry that should give a court pause when trying to determine whether the congressional demand should be enforced, the first of which is that it's radiating out broadly from a highly general alleged legislative purpose to anything that could possibly touch upon that purpose. The second is the breadth of the inquiry made of the specific target, and the third is that it asserts a demand for information over a long period of time alleging that anything that happened in the past is relevant to the present. The subpoenas at issue here run afoul of all three of those guardrails identified by Watkins. I think it's important to understand that we're not the one who called this a case study. That's the House of Representatives referring to the target of this particular subpoena being a case study. If we have identified any other case studies on the domestic side of any banking transactions, I have missed that in the record. The Capital One subpoena is obviously only targeted at the plaintiffs in this case. So I don't think that this court should simply accept the notion that case study is somehow a lie or fictitious. Where is the evidence that there are other people who are of comparable involvement in the real estate industry or in the money laundering field whose records have been targeted with the specificity that these subpoenas have? They have the subpoenas. We don't. They have not provided them to us or to the court, and the court can draw its own conclusions from that. I do want to thank Mr. Letter for making the point more clearly than I ever could have. He's absolutely right. I've never been an assistant U.S. attorney. I didn't work at the Department of Justice for 40 years. I wouldn't have the first idea how to go about investigating a money laundering operation. But that's not anything his client can do. That is specifically what his client is forbidden from doing. And you only have to look at the face of the subpoena to understand exactly what they're trying to do. The problem here is not only that the request might issue a check written to pay for the medical bills of an employee at a Trump organization. The subpoenas as drafted here look for every single debit card, every Diet Coke that a teenager bought using a credit card from Capital One, every single payment of any medical expenses or child care expenses. Is there any reason why the committee has to explain it does include the grandchildren because the definition of the Deutsche Bank subpoena reaches immediate family members, and because it identifies by name all of the president's children, it necessarily brings in their children as well, as well as their spouses. This is an un... The Deutsche Bank subpoena lists individuals who they want all these records for. Some of those individuals are the president's children. It also demands the records of all of the individual's immediate family members, which is defined to include spouses and children. So when you ask for the records of the president's children's children, you're asking for his grandchildren. They did not have to form their subpoenas so broadly. They could have actually limited it to something that would be far more defensible. They could have actually come in here with a legitimate legislative inquiry into how money laundering is working, and made a compelling case that they were not targeting the Trump family and trying to reconstruct their entire financial history. They made those decisions. They drafted the subpoena to cover what it does. They're the ones up here standing that we would not have any objection to it if we just understood how money laundering investigations work and how you have to track down family and trace every single branch. I can't imagine a clear example of the improper purpose here and the fact that this is law enforcement. I again commend to the court, and this gets to the standard of review question that I was asked. We do think that this is up here on the preliminary injunction. We think that the serious questions standard is right. That would support issuing a preliminary injunction or remanding the case down for actual negotiations, judicially refereed or otherwise. The parties can try to narrow some of their requests and keep this court from having to weigh in and essentially at the House's request rubber stamp the broadest possible subpoena ever served that targets a sitting president. Can I just say, you say look at the face of the subpoena and it's clear it has to be about law enforcement. Their answer is, as you know, no. We want to track all this down because we think this will be an excellent case study to help us draft legislation to prevent what we fear we might find in the future. Can we really infer simply from the breadth and scope of the subpoena that there are serious questions as to whether a law enforcement purpose. That's what the Supreme Court did in Kilbourne but it's the test that the Supreme Court has imposed on everybody. Well, and Watkins too. I think if you read Watkins carefully, and I think it's like around pages 205-206, Watkins walks through specifically what the nature of the inquiry is, acknowledges that it's delicate but still imposes on courts the obligation to do it. And again, I really do think that there is an opportunity here to at least narrow some of these requests. The statutory argument would accomplish some of that but also there's an opportunity to follow the path that was laid forward both in demanding a level of fit between the asserted purpose and the substance of the request as well as ensuring that the parties have done everything they can to prevent the court from having to wade into an area fraught with constitutional and novel difficulty. Are you expecting us to lay out guidelines for how that works out? The D.C. Circuit did so. I don't think it's necessary. I think that there are adults in the room here who can sit down and handle that. I certainly think perhaps some judicial... The D.C. Circuit, you mean the AT&T case? The AT&T case is the example that I had in mind. Although, again, the district courts in being basically ask the parties to do it themselves and I think may have appointed a third party to help mediate that dispute. That's the case you have in mind? That's the one I was referring to with respect to that. I think they did it twice. They sent it back down. One with very general parameters and one with far more specific parameters as to what should be done. Thank you. Now we have counsel here from the banks that have been subpoenaed. Would one of you from each of the banks please approach? I think we've just got a few questions for you. I know Judge Newman does. And have you signed in? I think you have, right? We have, yes. Okay, great. So you're identified for the record? Yes, Raphael Prober, on behalf of Deutsche Bank. And your name again? Raphael Prober. Thank you. I'm James Murphy on behalf of Capital One. Thank you. Did you have some questions? First, with respect to Deutsche Bank, does the bank have tax returns of any of the main people or entities? Your Honor, given contractual obligations and other legal obligations, that's unfortunately not a question that we're able to address. The bank has contractual obligations to its clients related to confidential— Can you even contract away the opportunity to answer a court's question without a privilege such as the Fifth Amendment or something comparable? You can just say, we told our client we won't do it? Your Honor, there are also statutes that are implicated, including likely Gramm-Leach-Bliley Act, which— What statute or privilege are you invoking? Gramm-Leach-Bliley Act, which provides for certain confidentiality of sensitive banking records. I'm not asking you for the content of them at all. I'm asking you, do you have them? Even just answering that question, I think, could run afoul of— Think it could? Yeah, Your Honor. We're not in a position to answer that question based on the relevant statute. If we want an answer to that question, will you go to a court and seek an order? Well, we'd be happy— I'm curious. Well, we need to know, because there's a separate statute on disclosure of returns. If you don't have them, we don't have to worry about it. If you do have them, we have to worry about it. So it's a fairly important question in this case. Understood, Your Honor. And given the relevant contractual obligations in the statute, which I just mentioned, I don't think I'm in a position to address that here in an open courtroom today. We'd be happy to continue that conversation with the court, but I'm just not at liberty. What does that mean, continue it? I just don't know what that means, we're going to continue it. When are we going to continue it? Well, Your Honor, I'm simply not able to answer that question standing here today. Are you able to answer it tomorrow after research? In an open courtroom, I would not be, based on the relevant contractual obligations. Would you like 48 hours in which to give us, under seal, an answer to the question whether you have the returns? And that's something we would, of course, be happy to explore. Explore or explore and do. My colleague, it seems to me we're exploring it right now. Yeah, we are. The question from the court is, we don't have a reporter to read it back, would you, within 48 hours, I'll put it this way, provide us a letter, please, indicating whether you do or do not have, whether your client does or does not have, and this is to both of you if you're also asserting the same position, does or does not have tax returns that would be produced in response to the subpoena if it were enforced as it is now articulated? Yeah, we will provide the court with a letter and also on the specific statutory prohibitions that we feel may be applicable to the extent there are. That apply to Capital One as well? We'd be happy to provide that letter in 48 hours, Your Honor. Yeah, well, would you like to answer the question? I mean, you're not Deutsche Bank, so you could take a different position if you would like. No, I'd prefer not to. Okay. I have one other question. The subpoenas were served, I think it's April 11th, and enforcement was stayed some weeks thereafter. During that interval, did your bank begin the process of collecting documents responsive to the subpoena? Your Honor, collection has been ongoing, and as the relevant chairs of both committees have stated publicly, Deutsche Bank has been working cooperatively with the committees in response to the portions of the subpoenas not impacted by this litigation. Could you give me just a rough estimate of the percent of that task you think has been completed? It's hard standing here today to give a percent, but it will not be an insignificant amount of information. It would not be insignificant? Correct. It would be significant? Correct. More than half? I really can't put a percentage on it. Could you give me even a rough estimate of the time it would take to complete compliance if compliance were not stopped? So that will, of course, depend on the court's ruling on whether to uphold the subpoena in full or in part. That's why I said assuming it was not stopped. And also we have not gone through the ordinary back-and-forth process of discussing with the committees the subpoena and working through compliance, so it's difficult to say. But certainly after the court's ruling, the bank would be looking to move as expeditiously as possible and work with the committees in that regard. Is that a matter of days, a couple of weeks, or more? It's really difficult to put an estimate on it. I think it's likely more, given the breadth and volume of information requested. A significant amount has been done already? A significant amount has been done. Is that also true of Capital One? Yes, Your Honor, significant work has been done on this subpoena. Okay, thank you. Thank you both. Thank you, principal arguers. Helpful argument and much appreciated. We'll reserve decision in this case, as you might expect. I'll ask the clerk, please, to adjourn court.